UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
November 17, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| United States of America, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Criminal Action H-22-249 |
| | § | |
| Andrew Jay Hill, | § | |
| | § | |
| Defendant. | § | |

## Memorandum Opinion on Dismissal

On May 24, 2022, a federal grand jury returned a one-count indictment, charging Andrew Jay Hill with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] Hill has since moved to dismiss the indictment on the basis that the statute is unconstitutional in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*.[2] This motion, now before the Court, will fail.

1.   *Legal Standard for Raising Dismissal*

Under Federal Rule of Criminal Procedure 12(b), a party may raise by pretrial motion any defense that the court can determine without a trial on the merits.[3] When a motion to dismiss an indictment is based on a legal question,

---

[1] [Doc. 12].

[2] 142 S. Ct. 2111 (2022).

[3] Fed. R. Crim. Pro. 12(b)(1).

consideration of the motion will generally be proper.[4] A challenge of the constitutionality of a statute, which Hill presently raises, is such an issue and can properly be decided as a matter of law prior to trial.[5]

2.   *Second Amendment Jurisprudence*

The Second Amendment provides, in whole: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[6] The Supreme Court in *Heller* recognized the right of ordinary, law-abiding citizens to possess a handgun in the home for self-defense,[7] and the Court in *Bruen* extended this right to contexts outside the home.[8] These two cases are briefly discussed below.

A.   D.C. v. Heller *and its Pre-*Bruen *Progeny*

In *Heller*, the Supreme Court held that the Second Amendment conferred an individual right to bear arms.[9] This right was later held to be applicable to the individual states, too, by virtue of the Fourteenth Amendment.[10] *Heller* was limited to the context of the home; the Court declared statutes banning handgun possession in the home, as well as statutes which required firearms in the home

---

[4] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

[5] *See, e.g., United States v. Cockerham*, No. 5:21-CR-6-DCB-FKB, 2022 WL 4229314 at *1 (S.D. Miss. 2022).

[6] U.S. CONST. amend. II.

[7] *District of Columbia v. Heller*, 554 U.S. 570 (2008).

[8] *Bruen*, 142 S. Ct. 2111.

[9] *Heller*, 554 U.S. 570.

[10] *See McDonald v. City of Chi., Ill.*, 561 U.S. 742, 750 (2010) (answering in the affirmative that the Second Amendment fully applies to the States by virtue of the Fourteenth Amendment).

to be inoperable, to be in violation of this right to bear arms.[11] Given *Heller*'s limited holding to gun rights in the home, the majority acknowledged that *Heller* left "so many applications of the right . . . in doubt," given that it was the Court's "first in-depth examination of the Second Amendment" and should not be expected "to clarify the entire field."[12] Among this uncertainty, the Court in *Heller*, in affirming the vitality of the Second Amendment, did not delineate the appropriate level of scrutiny that ought to apply to laws which restrict Second Amendment rights. In evaluating the District of Columbia law at issue, the Court offered that the severe restrictions of its handgun ban "would fail constitutional muster" under "any of the standards of scrutiny that we have applied to enumerated constitutional rights."[13] However, the Court noted its disapproval of "a freestanding 'interest-balancing' approach," on the basis that "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."[14]

Since *Heller*, but before *Bruen*, federal circuit courts, in tackling Second Amendment claims that fell outside of *Heller*, developed a two-step test. At the first step, the government has the burden to prove that the regulated conduct falls beyond the original scope of the Second Amendment — if so, the inquiry ends, and the government may regulate the categorically unprotected conduct. At the second step, courts assess whether the regulation burdens a core Second Amendment right, in which case strict scrutiny applies, or a non-core right, in which case intermediate scrutiny applies.[15]

---

[11] *Heller*, 554 U.S. at 635.

[12] *Id.*

[13] *Id.* at 628–29.

[14] *Id.* at 634.

[15] *See, e.g., United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) ("As we read *Heller*, it suggests a two-pronged approach to Second Amendment challenges."); *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) ("We employ a two-step inquiry when faced with Second Amendment challenges . . ."); *United States v. Greeno*, 679 F.3d

3

B.    Bruen

In the Supreme Court's recent decision in *Bruen*, the majority held that ordinary, law-abiding citizens have a right under the Second and Fourteenth Amendments to carry a handgun for self-defense outside of the home.[16] The Supreme Court struck down New York's "proper cause" licensing standard, under which applicants had to demonstrate a special need for self-protection distinguishable from that of the general community.[17]

In reaching its decision, the majority rejected the circuit courts' two-step framework, holding that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[18] To justify its regulation, the government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."[19] As explained, *Heller* never supported application of a means-end scrutiny, but instead relied on text and history; and the Court in *Bruen* echoed the posture in *Heller*: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."[20]

The Supreme Court then applied this standard to the New York statute and determined that a natural reading of the Second Amendment, which makes no home versus public distinction, encompasses public carry. Finding that the

---

510, 518 (6th Cir. 2012) ("We find this two-pronged approach appropriate and, thus, adopt it in this Circuit."); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ("[A] two-part approach to Second Amendment claims seems appropriate under *Heller*, as explained by the Third Circuit Court of Appeals.") (citing *Marzzarella*, 614 F.3d at 89).

[16] *Bruen*, 142 S. Ct. at 2122.

[17] *Id.* at 2117.

[18] *Id.* at 2126.

[19] *Id.*

[20] *Id.* at 2129 (citing *Heller*, 554 U.S. at 634).

plain text covers the petitioners' conduct, the Court turned to whether the statute was consistent with the Nation's history of firearms regulation. In this analysis, the Court concluded that the respondents failed to adequately identify historical limitations on the right to bear arms sufficient to justify the scope of the New York statute.[21]

3.    *Applicability to Felons*

Since the Supreme Court's decision, district courts around the country have been faced with the question now before this Court: whether 18 U.S.C. § 922(g)(1) is constitutional in light of *Bruen*.[22] Determination of this question requires this Court to confront the Second Amendment rights, if any, of felons.

While *Heller* and *Bruen* did not answer whether felons enjoyed Second Amendment rights, the former, in dicta, contemplated and apparently endorsed felon-in-possession laws, and the latter only reaffirmed the former. In *Heller*, the majority noted that its opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing conditions and qualifications on the commercial sale of arms,"[23] and the majority consistently referred to the right to firearm possession in the context of "law-abiding citizens."[24]

*Bruen* similarly suggests a law-abiding versus non-law-abiding distinction. Throughout its opinion, the majority, like in *Heller*, limited its endorsement of the Second Amendment right to ordinary, law-abiding citizens; for example, the opinion at one point noted that the two petitioners, "two ordinary, law-abiding,

---

[21] *Id.* at 2156.

[22] *See, e.g., United States v. Minter*, No. 3:22-CR-135, 2022 WL 10662252, at *7 (M.D. Pa. 2022) (collecting cases).

[23] *Heller*, 554 U.S. at 626–27.

[24] *See, e.g., id.* at 625, 635.

adult citizens," were within the meaning of the Second Amendment.[25] Justice Alito's concurrence made explicitly clear that the Court's holding was limited: "that the Second Amendment protects the right of *law-abiding people* to carry a gun outside the home for self-defense and that the [New York statute], which makes that virtually impossible for most New Yorkers, is unconstitutional."[26] His concurrence also affirmed *Heller's* endorsement of prohibitions for felons.[27]

In addressing the post-*Bruen* constitutional question now before this Court, some district courts have ruled, essentially, that 18 U.S.C. § 922(g)(1) is constitutional because the Supreme Court has indicated that such statutes are constitutional.[28] This Court will apply the test set forth in *Bruen* to ascertain the parameters of the Second Amendment right.

A.    *The Plain Text*

On first impression, the new test in *Bruen* would apparently apply to felons, at least at the first inquiry of whether the Second Amendment's plain text covers an individual's conduct. In ascribing the right to keep and bear arms, the brief text of the Second Amendment prescribes this right to "the people." Under this plain text inquiry, however, there is more than meets the eye when it comes

---

[25] *Bruen*, 142 S. Ct. at 2134.

[26] *Id.* at 2159 (Alito, J., concurring) (emphasis added).

[27] *Id.* at 2162 (Alito, J., concurring).

[28] *See, e.g., United States of America v. Shawn Lee Butts*, No. CR22-33-M-DWM, 2022 WL 16553037, at *3 (D. Mont. 2022) ("Ultimately, because *Bruen* does not disturb the felon dispossession component of *Heller*, it does not render § 922(g)(1) unconstitutional."); *United States v. Siddoway*, No. 1:21-CR-00205-BLW, 2022 WL 4482739, at *1–2 (D. Idaho, 2022) (finding examination of felon-in-possession statutes "unnecessary at this time" as the majority justices have already "indicated their explicit intent" in *Bruen* and *Heller*); *United States of America v. Paris Deatuan Grant*, No. CR 3:22-161-MGL-1, 2022 WL 16541138, at *3 (D. S.C., 2022) ("This Court cannot simply override a legal pronouncement endorsed by a majority of the Supreme Court") (quotations and citations omitted).

to "the people" and whether felons fall within this scope.

While *Heller* and *Bruen* repeatedly discussed the Second Amendment in the context of law-abiding citizens,[29] neither opinions clarified which groups qualified as "the people," as that term appears in the Second Amendment. This ambiguity has led to dueling interpretations by district courts nationwide on the question of whether "the people" should be read more broadly, such as in the context of the First and Fourth Amendments, or narrowly, such as in the case of voting rights.[30]

To be sure, the argument for a broad interpretation of "the people" is not wholly unconvincing. In *Heller*, the majority mentioned a "strong presumption that the Second Amendment right is exercised individually and belongs to *all* Americans."[31] Moreover, the rights of "the people" have extended to felons in other contexts, including the First and Fourth Amendments.[32]

Despite the argument for a broad interpretation, this Court finds the argument for a narrower interpretation of "the people," which does not include felons, more persuasive for the following reasons:

---

[29] *See, e.g., Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156; *Heller*, 554 U.S. at 625 635.

[30] *Compare United States v. Carrero*, No. 2:22-CR-00030, 2022 WL 9348792, at *2 (D. Utah 2022) (concluding that felons fall within "the people" as contemplated by the First and Fourth Amendments) *with United States v. Collette*, No. MO:22-CR-00141-DC, 2022 WL 4476790, at *3–7 (W.D. Tex. 2022) (concluding that felons have historically, in certain contexts including voting rights and the First Amendment right to assembly, fallen outside of "the people").

[31] *Heller*, 554 U.S. at 581 (emphasis added).

[32] *United States v. Coombes*, No. 22-CR-00189-GKF, 2022 WL 4367056, at *4 (N.D. Okla. 2022) ("The Fourth Amendment clearly applies to convicted felons. . . . Likewise, the First Amendment's categorical exclusions depend, not on the speaker, but on the nature of the speech itself."). *See generally id.* (holding that felons are included in "the people," as that term appears in the Second Amendment).

*i.*     Heller *and the Political Community*

While *Heller* voiced a presumption that the right belonged to all Americans, this statement is best understood in context not as a rule nor conclusion, but rather a baseline assumption that served as a precursor to its actual analysis. The majority merely "start[ed]" with that presumption and began to then actually interpret the contours of the Second Amendment.[33] Elsewhere, the majority held that "the people," wherever it appeared in the Constitution, "unambiguously refers to all members of the *political community*, not an unidentified subset."[34] This Court finds this interpretation particularly instructive. The political community is itself a subset which is identified and smaller than the umbrella of all individual persons. As explained by Judge Counts in the Western District of Texas, "*Heller* defined 'the people' as members of the political community, implying the phrase is limited to those with *political rights* like voting."[35]

It can hardly be disputed that the political community is smaller than the community-at-large; otherwise, the political community would include the likes of minors, undocumented immigrants, and, relevant here, felons. But just as children and undocumented immigrants cannot vote, statutes restricting felons' right to vote are in force and widespread to this day.[36] This limitation exists despite the Constitution's assignment of the right to vote to "the people."[37] Like voting rights, Second Amendment rights are a privilege afforded to the political community and can be forfeited upon demonstration that an individual does not,

---

[33] *See Heller*, 554 U.S. at 581.

[34] *Id.* at 580 (emphasis added).

[35] *Collette*, 2022 WL 4476790 at *6 (emphasis added).

[36] *State Voting Laws & Policies for People with Felony Convictions*, BRITANNICA PROCON.ORG, https://felonvoting.procon.org/state-felon-voting-laws/ (last updated Aug. 1, 2022).

[37] *See* U.S. CONST. art. I, § 2.

or no longer, fits the criteria to be a member of that political community. As understood by precedent, "the people" is limited to members of the political community — a group decidedly free of felons in critical aspects like voting.

Finally, interpreting "the people" as only including those with certain political rights by virtue of their eligibility to participate in the political community is in perfect harmony with, and in fact explains, the Supreme Court's virtually unwavering reference to only "law-abiding citizens" when discussing Second Amendment rights.[38]

>    ii.    *Deference to Dicta — Inapplicability of* Bruen's *Second Step*

Further supporting this Court's rationale that "the people" does not include felons is the dicta in *Bruen* and *Heller*, wherein the Supreme Court indicated that felon-in-possession statutes are perfectly valid, adopting an attitude suggesting that a dive into history and tradition is not the appropriate approach. Even if this Court is not bound by the Supreme Court's dicta, such dicta from the highest court commands significant deference.[39]

If a historical inquiry were warranted, the *Heller* and *Bruen* majorities would not have been so unconcerned about the constitutionality of such statutes without undergoing any historical analysis, let alone term them "presumptively lawful."[40] This Court doubts that the *Bruen* majority would have viewed laws banning felony possession as "presumptively lawful" if they thought that the Second Amendment's plain text extended to felons. Additionally, there is no indication, and this Court doubts, that the second step of the *Bruen* test, which requires that the government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation," should be conducted with a presumption of constitutionality in certain contexts.

---

[38] *See, e.g., Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156; *Heller*, 554 U.S. at 625 635.

[39] *See, e.g., Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (holding similarly).

[40] *Heller*, 554 U.S. at 626–27; *Bruen*, 128 S. Ct. at 2783 n.6.

Instead, the much more plausible explanation for why felon-in-possession statutes are "presumptively lawful" is because they fail at the first step — they are not covered by the plain text of the Second Amendment.

In heeding these parameters, the natural deduction is that felon-in-possession statutes fail at the first step of the *Bruen* test — i.e., felons do not fall within the "plain text" of the Second Amendment.

B.   *Second Step of the* Bruen *Test*

This Court holds that 18 U.S.C. § 922(g)(1) remains constitutional in the aftermath of *Bruen*; in applying its test, this Court finds that felons are not covered under the plain text of the Second Amendment, because they are not within the categories of individuals which the plain text "presumably protects."[41] Therefore, an analysis of whether such regulation is justified by our historical tradition is unnecessary.

Even if this Court were to undertake a historical analysis, its conclusion would be that felon-in-possession statutes do fall within our historical tradition of firearm regulation, for the reasons enumerated by other district courts nationwide that have engaged in this analysis to-date, all of which had answered the question in the affirmative.[42]

Finally, while not dispositive, this Court notes that, as far as it knows, every other federal court that has assessed the facial or as-applied constitutionality of 18 U.S.C. § 922(g)(1) in the wake of *Bruen* has upheld its constitutionality.[43]

---

[41] *Bruen*, 142 S. Ct. at 2126.

[42] *See, e.g., Coombes*, 2022 WL 4367056 at *5–8; *Carrero*, 2022 WL 9348792 at *2–3.

[43] *See Shawn Lee Butts*, 2022 WL 16553037 at *4, n.4 (collecting cases); *Carrero*, 2022 WL 9348792 at *3 (same). *See also United States v. Deon Reese*, No. 19-CR-257, 2022 WL 16796771 (W.D. Pa. 2022) (issued after *Shawn Lee Butts* and *Carrero*).

5.     *Commerce Clause*

While Hill briefly argues that 18 U.S.C. § 922(g)(1) is unconstitutional, he concedes, almost in the same breath, that the argument is currently foreclosed in light of controlling Commerce Clause interpretations. While *Bruen* may have affected the landscape of Second Amendment rights, nothing from the Supreme Court counsels this Court to reconsider valid, longstanding Commerce Clause jurisprudence, under which 18 U.S.C. § 922(g)(1) survives without fanfare.

6.     *Conclusion*

In sum, Hill's motion to dismiss his indictment is unsuccessful because 18 U.S.C. § 922(g)(1) remains constitutional. Felons are not covered under the plain text of the Second Amendment, which affords protection only to the political community. Even if they were covered, felon-in-possession statutes are within our historical tradition of firearm regulation. Hill's motion will fail.

Signed on November *17*, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge